**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| STANLEY T. HAWKINS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:12-cv-02338-JPM-tmp |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER AFFIRMING DECISION OF COMMISSIONER

Plaintiff Stanley Hawkins brought this action for judicial review of Defendant Michael Astrue's ("the Commissioner") final decision denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act") and his application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act.

For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## I.    BACKGROUND

### A.    Factual Background

Hawkins was born on April 19, 1955, and at the time of his hearing before the ALJ, he was fifty-five years old. (R. 26, 102.) Hawkins is five feet and ten inches tall and weighs 202 pounds. (R. 88.) He obtained his GED "through the military" and attended Delgado Community College in New Orleans,

Louisiana, for two years. (R. 26.) Hawkins worked as a finance manager in the automobile industry from 1978 until February 4, 2008. (R. 26-27.)

Hawkins suffered his first heart attack in July 2005. (R. 200-01.) He had a pacemaker and defibrillator implanted on July 29, 2005, and was able to return to work approximately three weeks after the heart attack. (R. 27, 201, 244; see also R. 373.) Hawkins suffered a second heart attack on February 8, 2008. (R. 244.) He was diagnosed with chronic obstructive pulmonary disease ("COPD") and has a history of myocardial infarction with congestive heart failure. (R. 242-44.) He has had two stents placed in his heart. (See R. 516, 533-36.) Hawkins also complains of anxiety and back pain. (R. 33, 373, 468-70, 483.) Hawkins has not returned to work since suffering his second heart attack. (R. 27.)

**B.    Procedural Background**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on March 12, 2008. (See R. 11.) Plaintiff also filed a Title XVI application for supplemental security income on March 14, 2008. (See id.) Plaintiff alleged that he suffered a heart attack on February 8, 2008, which rendered him unable to work. (See ECF No. 16 at 6.)

Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. (See R.

40-43, 49-52.)  Plaintiff then requested a hearing before an

administrative law judge ("ALJ") (see R. 53), which was held on

June 16, 2010 (R. 23).

On September 8, 2010, the ALJ issued a decision, finding

that Plaintiff was not entitled to benefits.  (R. 11-17.)

Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements
> of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful
> activity since February 8, 2008, the alleged onset
> date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments:
> chronic obstructive pulmonary disease and history of
> myocardial infarction with residual congestive heart
> failure (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals one of the listed impairments in 20 CFR Part
> 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record,
> the [ALJ] finds that the claimant has the residual
> functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) and 416.967(b) except the
> claimant can sit for seven hours per day, stand/walk
> for no more than 4 hours in an 8 hour work day, and
> stoop for no more than three hours per day.
>
> . . . .
>
> 6. The claimant is capable of performing past relevant
> work as a finance/sales manager.  This work does not
> require the performance of work-related activities
> precluded by the claimant's residual functional
> capacity (20 CFR 404.1565 and 416.965).

. . . .

          7. The claimant has not been under a disability, as
          defined in the Social Security Act, from February 8,
          2008, through [September 8, 2010] (20 CFR 404.1520(f)
          and 416.920(f)).

(R. 13-17.)

     Plaintiff timely filed a request for review of the hearing

decision.  (R. 6-7.)  On March 2, 2012, the Appeals Council

denied Plaintiff's request for review, thereby making the ALJ's

decision the final decision of the Commissioner.  (R. 1-3.)

Plaintiff then filed this action, requesting reversal of the

decision of the Commissioner or a remand.  (See Compl. at 2-3,

ECF No. 1.)

     On December 26, 2012, Plaintiff filed a memorandum in

opposition to the Commissioner's decision.  (ECF No. 16.)[1]

Defendant filed a memorandum in support of the Commissioner's

decision on January 24, 2013.  (ECF No. 17.)

## II.  LEGAL STANDARD

     Pursuant to 42 U.S.C. § 405(g), a claimant may obtain

judicial review of any final decision made by the Commissioner

after a hearing to which he was a party.  "The court shall have

the power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the

---

          [1] Plaintiff initially filed this memorandum without an electronic
signature on December 26, 2012 (ECF No. 14), but corrected the deficiency the
same day.  (See ECF Nos. 15, 16.)

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

A district court's review is limited to the record made in the administrative hearing process. Jones v. Sec'y, Health & Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 854 (6th Cir. 2010); Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604-05 (6th Cir. 2009).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). "'Substantial evidence' is more than a mere scintilla of evidence, but less than a preponderance." Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (quoting Consol. Edison, 305 U.S. at 229).

The Commissioner, not the district court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Bass v. McMahon, 499

5

F.3d 506, 509 (6th Cir. 2007).  When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.  See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

**III. ANALYSIS**

**A.    Administrative Determination**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity."  42 U.S.C. § 423(d)(1).  The claimant bears the ultimate burden of establishing an entitlement to benefits.  Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).  "A prima facie case is established if the claimant shows a medical basis for an impairment that prevents him from engaging in his particular occupation."  Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir. 1978).  The burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.  Id. at 361; Born, 923 F.2d at 1173.

The Commissioner conducts the following five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Long v. Comm'r of Soc. Sec., 375 F. Supp.2d 674, 676-77 (W.D. Tenn. 2005) (citing Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683-84 (6th Cir. 1992)); 20 C.F.R. § 404.1520(a)(4); accord Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 238 (6th Cir. 2002).  Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.  20 C.F.R. § 404.1520(a).

In the instant case, the sequential analysis proceeded to the fourth step.  The ALJ found that Plaintiff was capable of performing his past relevant work as a finance/sales manager considering his residual functional capacity.  (R. 14-17.)

**B.  Review of ALJ Decision**

Plaintiff argues the ALJ erred by (1) not finding a severe mental impairment, (2) failing to properly apply 20 C.F.R. § 404.1520 when evaluating Plaintiff's medical history; (3) failing to properly evaluate Plaintiff's subjective complaints of shortness of breath and back pain, and (4) failing to give proper weight to the professional opinions of Plaintiff's medical providers, including Dr. Jeffrey May and his physician's assistant, Robert Moody.  (ECF No. 16 at 9-16.)  The Court disagrees.

**1.  Finding of Mild Mental Impairment**

Plaintiff first argues that the ALJ failed to consider the entire record in determining that Plaintiff's anxiety resulted in a mild impairment.  (Id. at 12-13.)

In determining that Plaintiff had no more than a mild limitation as a result of his alleged anxiety, the ALJ considered Plaintiff's allegations, the absence of any treatment by a mental health professional, and Plaintiff's functional abilities in the areas of (1) daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation.  (R. 13-14.)  The ALJ found that Plaintiff had no limitations to daily living or social functioning, no more than mild limitations to concentration, and experienced no episodes of decompensation.  (Id.)

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms." Rogers, 486 F.3d at 243 n.2 (alteration in original) (quoting 20 C.F.R. § 416.908).

Plaintiff is correct that there is evidence in the record supporting his assertions that he suffered anxiety. There is no medical evidence, however, to support Plaintiff's contention that his anxiety was so severe as to affect his ability to perform work-related activities.

Specifically, Perry Adams, Senior Psychological Examiner, stated that "no signs or symptoms of a major mental disorder were noted." (R. 469.) According to Adams, Plaintiff reported only "mild anxiety related to bedtime." (Id.) Adams opined that Plaintiff suffered "mild limitations in sustaining concentration, persistence and in interacting with others." (R. 470.) Dr. C. Warren Thompson also evaluated Plaintiff's anxiety and determined that his "mental impairment does not have more than a minimal [e]ffect on [his] ability to function and [is] therefore non-severe." (R. 483.) Additionally, there was no evidence that Plaintiff sought treatment from a mental health professional. (See R. 15.) Although Plaintiff alleges that he suffer from panic attacks, he reported only one panic attack to Adams and Dr. Thompson. (See R. 469, 483.) As the ALJ

correctly pointed out, there is a "lack of any documented ongoing mental pathology." (R. 16.)

Accordingly, there is substantial evidence in the record to support the ALJ's finding "that the record establishes no severe mental impairment." (R. 13.) Plaintiff's first claim of error is overruled.

## 2. Application of 20 C.F.R. § 404.1520

At the third step of the sequential analysis, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 14.) Plaintiff argues that he has a listed cardiovascular impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 § 4.00. (ECF No. 16 at 10.) According to Plaintiff, because "Chronic Obstructive Pulmonary Disease ("COPD") is an example of pulmonary vascular disease," and § 4.00 refers to pulmonary vascular disease as a cause of cardiovascular impairment, Plaintiff's COPD qualifies as a listed impairment. (Id.) Plaintiff also asserts that his condition meets or equals two other listed impairments: (1) ischemic heart disease; and (2) chronic heart failure. (Id. at 11.) Defendant argues that, although chronic obstructive pulmonary disease is referred to an example of a cardiovascular impairment, § 4.00 is not a listed impairment, but rather a preamble to the set of cardiovascular

10

impairments.  (ECF No. 17 at 7.)  Defendant further argues that
Plaintiff has not cited any medical evidence to satisfy the
enumerated criteria for ischemic heart disease or chronic heart
failure.  (Id. at 7-8.)

First, Plaintiff reveals a fundamental misunderstanding of
§ 4.00.  Section 4.00 sets forth background information on
cardiovascular impairments, guidelines for evaluating
impairments, and other important considerations.  Clark v.
Colvin, Civil Action No. 14-106-DLB, 2015 WL 1947338 at *4 (E.D.
Ky. Apr. 29, 2015) ("[Listing 4.00] is an introductory section
that sets forth the general rules for evaluating all
cardiovascular impairments detailed in Listings 4.02 through
4.12.").  Because § 4.00 does not articulate "listed
impairments," the ALJ did not err in determining that Plaintiff
did not have a listed impairment set forth in § 4.00.

Second, there is substantial evidence to support the ALJ's
conclusion that Plaintiff does not satisfy the criteria for
ischemic heart disease or chronic heart failure.  As Defendant
correctly notes, a plaintiff must satisfy very specific criteria
to demonstrate ischemic heart disease.  (See ECF No. 17 at 7-8.)
Importantly, a plaintiff must demonstrate that he or she
satisfies these criteria "while on a regimen of prescribed
treatment."  20 C.F.R. pt. 404, subpt. P, app. 1 § 4.04.
Plaintiff does not cite to any specific medical evidence that

11

satisfies the criteria in § 4.04, but cites generally to Exhibit 3F (R. 238-86). (ECF No. 16 at 11.) Exhibit 3F contains the records from Methodist North Hospital dated February 13, 2008, through February 16, 2008, the period immediately following Plaintiff's heart attack. (See ECF No. 12-11 at PageID 286; ECF No. 12-12 at PageID 314.) Thus, not only do these records fail to satisfy the § 4.04 criteria, they are not indicative of Plaintiff's status "while on a regimen of prescribed treatment."

Similarly, to establish chronic heart failure, as described in § 4.02, a plaintiff must satisfy specific criteria "while on a regimen of prescribed treatment." 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.02. For example, a plaintiff can satisfy one criterion by demonstrating systolic failure with an "ejection fraction of 30 percent or less during a period of stability." Id. at § 4.02(A)(1). Plaintiff points to evidence that his "left ventricular ejection fraction [was] estimated to be around 20% to 25%" in July and August 2005 (R. 184, 311, 316). (ECF No. 16 at 11.) On February 28, 2008, however, Plaintiff's "[e]stimated ejection fraction [was] 35%." (R. 305; see also R. 307.) Thus, the 2005 records identified by Plaintiff are not indicative of Plaintiff's heart condition while on a treatment regimen. Moreover, these records do not establish that Plaintiff satisfies the other requirements of § 4.02. Accordingly, there is substantial evidence to support the ALJ's

finding that Plaintiff does not have an impairment that meets or equals chronic heart failure as described in § 4.02.

Third, there is substantial evidence to support the ALJ's finding that Plaintiff's general heart condition was not equivalent to a listed impairment. Plaintiff asserts that the evidence in Exhibits 2F (R. 212-37), 4F (R. 287-316), and 5F (R. 317-45) demonstrates a severe impairment "even if the exact elements of a listed impairment . . . cannot be proven." (ECF No. 16 at 11.) The records in Exhibit 2F are dated February 13, 2008; those in Exhibit 4F are dated July 25, 2005, through February 28, 2008; and those in Exhibit 5F are dated February 13, 2008, through February 16, 2008. (ECF No. 12-10 at PageID 259; ECF No. 12-13 at PageID 337; ECF No. 12-14 at PageID 368.)

In reaching his decision, the ALJ considered that (1) Plaintiff underwent placement of a pacemaker/defibrillator in 2005 and resumed substantial gainful activity; (2) Plaintiff had myocardial infarction and total occlusion of the right coronary artery for which he underwent angioplasty and stenting in February 2008; (3) following his angioplasty, Plaintiff's treating cardiologist determined that Plaintiff's symptoms were present only with strenuous or prolonged activity; and (4) the record documents no complaints of chest pain and only one reported instance of shortness of breath outside of the period

immediately surrounding Plaintiff's February 2008 heart attack.
(R. 14-16.)

It is notable that Plaintiff points only to medical
evidence from the time periods immediately surrounding his 2005
pacemaker surgery and 2008 heart attack to support his
allegations of a severe cardiovascular impairment.  The ALJ
determined that the "minimal documented complaints" outside of
the period immediately surrounding Plaintiff's 2008 heart attack
were "obviously incompatible with the chronic disabling heart
disease alleged." (R. 15.)  Substantial evidence in the record
supports this conclusion and, as a result, supports the ALJ's
finding that Plaintiff "does not have an impairment or
combination of impairments that meets or medically equals one of
the listed impairments in 20 CFR Part 404, Subpart P, Appendix
1." (See R. 14.)  Plaintiff's second claim of error is
overruled.

### 3.    Consideration of Plaintiff's Subjective<br>Complaints of Physical Impairment

Plaintiff also asserts that the ALJ did not sufficiently
consider his complaints that he was unable to work due to heart
failure, shortness of breath, and back pain.  (ECF No. 16 at 13-
14.)  Plaintiff maintains that the ALJ's review violated 20
C.F.R. § 404.1529(c).  (Id. at 14.)  Defendant argues that the
ALJ properly discounted Plaintiff's subjective complaints given

the lack of consistent objective medical evidence. (ECF No. 17
at 9-11.)

20 C.F.R. § 404.1529(a) provides in pertinent part that
"[i]n evaluating the intensity and persistence of [a claimant's]
symptoms, including pain, [the ALJ] will consider all of the
available evidence, including [the claimant's] medical history,
the medical signs and laboratory findings and statements about
how [the claimant's] symptoms affect [him or her]." Subsection
(b) of that provision further notes that "symptoms, such as
pain, fatigue, shortness of breath, weakness, or nervousness,
will not be found to affect [a claimant's] ability to do basic
work activities unless medical signs or laboratory findings show
that a medically determinable impairment(s) is present." 20
C.F.R. § 404.1529(b).

In evaluating the severity of Plaintiff's physical
symptoms, the ALJ found that (1) Plaintiff's minimally
documented complaints were inconsistent with a "chronic
disabling heart disease"; (2) "[t]he lack of medically
documented ongoing treatment for or complaints of COPD symptoms
shows that whatever such symptoms the claimant had were
insignificant"; (3) Plaintiff's "choice to continue smoking
indicates that whatever respiratory symptoms he may have are
insignificant"; (4) "[t]he lack of ongoing treatment for or
complaints of back symptoms shows that if the claimant had any

15

back pain it was minor"; (5) Plaintiff's "reported activities are not reflective of a chronic incapacitating degree of anxiety, fatigue, or any other symptoms." (R. 14-16.)

Based on the record, the ALJ properly discounted Plaintiff's subjective complaints. See Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990) ("[T]he ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531-32 (6th Cir. 1997) ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, [the Sixth Circuit] will generally defer to the Commissioner's assessment when it is supported by an adequate basis."). The ALJ explicitly documented the reasons why he found Plaintiff's complaints to be inconsistent with the objective medical record. (See R. 14-16.) Specifically, the ALJ noted that the lack of medically documented ongoing treatment for Plaintiff's COPD symptoms, shortness of breath, and back pain revealed that these symptoms do not persist at a disabling level of severity. (Id.; see 20 C.F.R. § 404.1508.) The ALJ reasonably noted that Plaintiff's "treating cardiologist assessed [him] as having Canadian Class I Cardiovascular Function, meaning that symptoms are present only with strenuous

16

or prolonged activity." (R. 14-15.) Regarding Plaintiff's claims of shortness of breath, the ALJ further noted that the "medication listings last noted a prescription for the treatment of COPD (Spiriva) in July 2005." (R. 15.)

Moreover, the ALJ properly discounted Plaintiff's complaints of shortness of breath in light of the fact that Plaintiff continued to smoke despite recommendations to quit. See Brown v. Soc. Sec. Admin., 221 F.3d 1333, 2000 WL 876567, at *1 (6th Cir. 2000) (unpublished table decision) ("Although Brown suffers from chronic obstructive pulmonary disease, his heavy smoking habit indicates that the condition is not disabling."); Arnold v. Comm'r of Soc. Sec., 238 F.3d 419, 2000 WL 1909386, at *3 (6th Cir. 2000) (unpublished table decision) ("If a claimant does not follow the prescribed treatment without a good reason, he will not be found disabled. 20 C.F.R. § 404.930(b). The evidence here indicated that plaintiff's doctors repeatedly instructed him to stop smoking, but plaintiff continued to smoke despite those warnings."). "If the claimant in this case chooses to drive himself to an early grave, that is his privilege—but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride." Sias v. Sec'y of Health & Human Servs., 861 F.2d 475, 480 (6th Cir. 1988) (per curiam).

Accordingly, the Court finds that the ALJ's decision to discount Plaintiff's complaints because Plaintiff's subjective statements were inconsistent with and unsupported by the medical record is supported by substantial evidence. Plaintiff's third claim of error is, therefore, overruled.

### 4. Consideration of Plaintiff's Medical Providers

Plaintiff also argues that the ALJ gave insufficient weight to the opinions of Dr. Jeffrey May and his physician's assistant, Robert Moody. (ECF No. 16 at 14-16.) Defendant contends that the ALJ properly discounted Moody's opinion because he was not an acceptable medical source and because his opinion was inconsistent with the opinion of Dr. Maureen Smithers, Plaintiff's treating cardiologist, as well as the opinions of consultative examiner Dr. Paul Katz and state agency medical consultants Drs. Louise Patikas and Frank Pennington. (ECF No. 17 at 11-12.)

Under the regulations, an ALJ must articulate good reasons for not crediting the opinion of a "treating source." See Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544-45 (6th Cir. 2004). A "treating source" is defined as a plaintiff's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an

18

ongoing treatment relationship with [the claimant]." 20 C.F.R.
§ 404.1502; see 20 C.F.R. § 404.1513(a) (defining "acceptable
medical sources"). Unlike a physician, a physician's assistant
is not an "acceptable medical source." 20 C.F.R. §§ 404.1502,
404.1513(d)(1). Social Security Regulation 06-03p nevertheless
instructs courts to consider opinions from other medical
sources, such as physician's assistants, along with the other
relevant evidence in the file. SSR 06-03p, 2006 WL 2329939
(Aug. 9, 2006).

    The ALJ properly discounted the testimony of physician's
assistant Robert Moody. Because Moody is a physician's
assistant, the ALJ was required to consider his opinion, along
with the other relevant evidence in the record, but was not
required to articulate a "good reason" for his decision not to
credit it. See SSR 06-03p. Compare Smith, 482 F.3d at 876
(finding that where doctors did not qualify as treating sources,
the ALJ did not err in failing to give reasons for rejecting
their reports), with Rogers, 486 F.3d at 243 (holding that an
ALJ must identify reasons for discounting treating physician
opinions and explain "precisely how those reasons affected the
weight accorded the opinions"), and Wilson, 378 F.3d at 545
(finding the ALJ erred in failing to "give good reasons" for not
giving weight to treating physician opinion). The ALJ
nevertheless provided a "good reason." Specifically, the ALJ

found that "Mr. Moody's opinion [was] unsupported by medical evidence and inconsistent with the record as a whole." (R. 16.) The ALJ noted that there was no medical evidence of "back pathology or other medical condition that could impose the degree of functional limitation that Mr. Moody opined to be present." (Id.) The ALJ further stated that Moody's opinion was inconsistent with the opinion of the treating cardiologist Dr. Smithers. (Id.) Substantial evidence supports the ALJ's finding that Moody's opinion was inconsistent with and unsupported by the other relevant medical evidence.

To the extent that Plaintiff argues that the ALJ failed to properly consider the opinion of his treating physician, Dr. Jeffrey May, Plaintiff is incorrect. The ALJ did consider the letter signed by both Moody and Dr. May, dated May 11, 2010. (See R. 516.) Although the letter asserts that Plaintiff "has been a patient at May Medical Group since July 24, 2008," this is the only document signed by Dr. May in the record. (Id.) The record indicates that Plaintiff visited May Medical Group on July 24, 2008; August 1, 2008; August 21, 2008; September 18, 2008; and October 16, 2008 (R. 455-460), but it appears that Plaintiff only met with Moody during those visits.[2]

---

[2] Plaintiff's testimony at the ALJ hearing on June 16, 2010, is consistent with this observation. Specifically, the following colloquy occurred:

"A physician qualifies as a treating source if the claimant sees [him] 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" Smith, 482 F.3d at 876 (second alteration in original) (quoting 20 C.F.R. § 404.1502). Regardless of the appropriate frequency in this particular situation, Plaintiff fails to demonstrate that he ever received treatment from Dr. May. Thus, Dr. May cannot be considered to be a "treating source," and the ALJ was not required to provide a "good reason" for discounting Dr. May's opinion regarding Plaintiff's functional ability. Nevertheless, the ALJ considered the letter signed by Dr. May and Moody. (R. 16.) In this letter, Dr. May and Moody opined that Plaintiff "has shortness of breath with minimal activity, . . . is unable to sustain exertion[,] . . . has severe back pain[,] and is unable to sit or stand for prolong[ed] times, reach, bend, or twist his back due to increased pain." (R. 516.) The ALJ properly gave this letter "minimal evidentiary weight" because it is

---

Q     Now, there are functional capacity evaluations in here from a Robert Moody and from May Medical.

A     Yes, sir.

Q     Are they treating doctors?

A     Yes, sir, I see Dr. Moody. For two years straight, I saw him every month, and then recently he's gone to where I only have to see him every other month.

(R. 29 (emphasis added).)

inconsistent with the opinions of treating cardiologist Dr. Maureen Smithers, examining physician Dr. Paul Katz, and reviewing Disability Determination Services ("DDS") medical consultants Drs. Louise Patikas and Frank Pennington. Substantial evidence supports the ALJ's decision, and accordingly, Plaintiff's fourth claim of error fails.

In the instant case, Plaintiff has failed to carry his burden of proof.  Plaintiff has not shown that the ALJ applied the incorrect standard or that there is not substantial evidence to support the ALJ's finding that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act.

When the ALJ determines that a plaintiff is capable of performing past relevant work at step four of the sequential evaluation, the disability determination ends, and consideration of whether Plaintiff can perform other work at step five is unnecessary.  20 C.F.R. § 404.1560(b).

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED,** this 4th day of May, 2016.


/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE